**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARK SEYBERT, on his own behalf and on behalf of all others similarly situated, | : : : Case No. |
| Plaintiff, | : : |
| v. | : JURY TRIAL DEMANDED : : |
| FARMERS PROPERTY AND CASUALTY INSURANCE COMPANY, f/k/a Metropolitan Property and Casualty Company, and FARMERS GROUP PROPERTY AND CASUALTY INSURANCE COMPANY, f/k/a Metropolitan Group Property and Casualty Insurance Company, | : : : : : : |
| Defendants. | : : |

## CLASS ACTION COMPLAINT

### I.     INTRODUCTION

1.     This action is brought by Plaintiff Mark Seybert, pursuant to Fed. R. Civ. P. 23, on his own behalf and on behalf of all other persons similarly situated for damages arising from Defendants' wrongful pattern of denying auto insurance coverage to a specific class of accident claimants in violation of their own policy terms.

2.     Specifically, the Plaintiff was denied coverage for property damage from an accident that occurred at a High Performance Driving Education ("HPDE") course under a policy exclusion pertaining to **Racing**, when it is undisputed in the insurance world that **HPDE events are not Racing.**

3.     HPDE courses and educational events are designed by instructors to teach techniques and maneuvers to car owners and driving enthusiasts who seek to drive their own

automobile on a closed track, safely, under professional supervision, and without fear of getting a ticket.

4.     HPDE courses and events are not racing contests, nor are they practice for racing competitions.

5.     The illegal scheme here—systematic denial of otherwise eligible claims—is evident from the broader context that reveals how insurance companies write policies to specifically address coverage exclusions for property damage from activities such as racing, driving on racetracks, and attending HPDE events. To wit, for years it has been common for an insurance policy to contain clear language regarding coverage for racing, for an HPDE event, or for any accident occurring on a track.

6.     The Defendants in this case unlawfully denied coverage to the Plaintiff, as well as other class members, whose policies do not contain any HPDE-exclusionary language at all.

7.     The subject policies were not intended to exclude coverage for accidents occurring at HPDE events—yet for years, Defendants have routinely and systematically denied coverage for property damage from accidents that occurred during HPDE courses, to the extreme financial detriment of Plaintiff and members of the Classes, as described in more detail below.

8.     As a result of Defendants' bad faith conduct, Plaintiff has been forced to commence the present litigation on behalf of himself and the proposed Classes.

## II.   <u>THE PARTIES</u>

9.     Plaintiff MARK SEYBERT (referred to as "Seybert," the "Insured" or "Plaintiff"), is an adult individual residing at 4 Tolberts Turn in Sewell, New Jersey 08080.

10.    Defendant, Farmers Property and Casualty Insurance Company, f/k/a Metropolitan Property and Casualty Insurance Company ("FPCI") is a Rhode Island corporation with a principal

place of business at 700 Quaker Lane, Warwick, RI 02886 and is duly licensed to sell and administer insurance in the State of New Jersey.

11.     Defendant, Farmers Group Property and Casualty Insurance Company, f/k/a Metropolitan Group Property and Casualty Insurance Company ("FGPCI" and together with "FPCI," "Defendants" or "Farmers")[1] is a Rhode Island corporation with a principal place of business at 700 Quaker Lane, Warwick, RI 02886 and is duly licensed to sell and administer insurance in the State of New Jersey.

12.     Farmers issued policies of insurance within the State of New Jersey and in this judicial district.

13.     At all times material hereto, Defendants were acting by and through duly authorized agents, servants, workmen or employees acting within the course and scope of their employment and on the business of said employer.

## III.    JURISDICTION

14.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendants.

15.     The Court has personal jurisdiction over Defendants because at all relevant times Plaintiff has been a citizen of the State of New Jersey and his insurance policy was written and

---

[1] MetLife, Inc. completed the sale of Defendants to Farmers Group, Inc. on April 7, 2021. *See* https://www.metlife.com/about-us/newsroom/2021/april/metlife-completes-sale-of-auto-home-business-to-zurich-insurance-group-subsidiary-farmers-group-inc/ (last visited Feb. 28, 2022). This acquisition and name change from MetLife to Farmers overlapped the factual timeline relevant to Plaintiff's claims. To avoid confusion and for ease of reference, Defendants and Defendants' agents shall be referred to using the "Farmers" moniker throughout.

issued in New Jersey. Defendants have transacted, solicited, and conducted business in New Jersey through employees, agents, and/or sales representatives, and derived substantial revenue from such business in New Jersey.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction here and regularly conduct business in New Jersey, because Plaintiff resides in this district and his transaction at issue, both the policy issuance and the accident, occurred in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## IV.   **INDIVIDUAL PLAINTIFFS' CAUSE OF ACTION**

17.     Defendants, in their regular course of business, issued to Plaintiff a policy of insurance bearing policy number 5695210820. A true and correct copy of Plaintiff's Declaration Page is attached hereto and incorporated herein as Exhibit "A" and a true and correct copy of Plaintiff's Policy is attached hereto and incorporated herein as Exhibit "B."  Exhibits A & B together shall be referred to as Plaintiff's "Policy."

18.     Included as covered property in Plaintiff's Policy is Seybert's 2019 Chevrolet Corvette (the "Subject Vehicle"). Coverage was in effect from January 9, 2021 until January 9, 2022. *See* Exhibit A.

19.     Plaintiff faithfully paid policy premiums to Defendants, specifically to provide, among other things, coverage for damage to the Subject Vehicle.

20.     In exchange for premium payments, Defendants promised to insure for the coverages and applicable limits shown in the declarations. *See* Exhibit B at 1.[2]

---

[2] This page numbering refers to the pagination convention contained in the policy itself, which is 1 of 16. The corresponding PDF page numbering is page 4 of 19.

21.    Plaintiff's Policy defines the term "Loss" to mean "direct, sudden and accidental damage or total or partial theft." Exhibit "B" at 2.

22.    Plaintiff's Policy defines the term "Racing" as follows:

RACING means preparing, practicing, competing or driving in any organized or prearranged:

1. race;
2. speed contest;
3. high speed driving;
4. stunting;
5. demolition, or
6. other similar organized exhibition or demonstration, on a closed course.

Exhibit "B" at 3.

23.    Under the Section "Liability Coverage" in Plaintiff's Policy there is an Exclusion at Paragraph K which reads, "We do not cover [Bodily Injury] or [Property Damage] caused by or resulting from any auto while racing." *See* Exhibit "B" at 5.

24.    Under the Section "Physical Damage Coverage" in Plaintiff's Policy there is an Exclusion at Paragraph F which reads, "We do not cover loss to any auto while racing." *See* Exhibit "B" at 10.

25.    For the purposes of this Complaint, the definition of Racing on page 3 of the Policy, plus the aforementioned exclusions at Paragraph K on page 5 and Paragraph F on page 10, taken together shall be known as the "Racing Exclusion."

26.    On or about Friday, March 26, 2021, while Plaintiff's Policy was in full force and effect, Plaintiff was participating in an HPDE event at New Jersey Motorsports Park in Millville, New Jersey when he got into an accident that resulted in damage to the Subject Vehicle, as well as a guardrail.

5

27.     Notice of this covered loss was given to Defendants on Monday, March 29, 2021 in a prompt and timely manner and Plaintiff, at all relevant times, fully complied with all of the terms and conditions required by Plaintiff's Policy. Plaintiff communicated with a Farmers claim consultant and an investigator on Monday, March 29, 2021. The claim was assigned Claim # SLR19099 D3.

28.     Plaintiff informed Defendants that the accident occurred while Plaintiff was participating in an HPDE event organized by the Motorsports Enthusiasts HPDE ("MoE HPDE") of Cherry Hill, New Jersey.

29.     Plaintiff produced to Defendants a copy of a letter from MoE HPDE, which stated that the event on March 26, 2021 was "a car control clinic, with participants driving under supervision by our staff." The letter explained that Plaintiff was a student who was receiving instruction in a school/classroom environment. The letter further stated: "This was not a practice for any type of racing event or other competition, and no timing was permitted." *See* MoE HPDE Letter attached hereto as Exhibit "C".

30.     On Tuesday, March 30, 2021, Plaintiff received a repair estimate from Jim Nedler at Farmers listing the total cost of estimated repairs as $17,783.50. *See* March 30, 2021 Repair Estimate, attached hereto as Exhibit "D."

31.     On Wednesday, March 31, 2021, Richard Cuccolo, Farmers Major Case Investigator, conducted a telephone interview with the Plaintiff.  Upon information and belief, that telephone call was recorded by the Defendants.

32.     Defendants' investigation of Plaintiffs' insurance claim was a sham. Defendants repeatedly mis-characterized Plaintiff's participation in the MoE HPDE event as "racing." Defendant's investigator attempted to solicit from the insured an *admission* that he was in fact

engaged in *racing*. Mr. Seybert was adamant, however, that he was *not* racing or practicing for racing or any related activity.

33.      Plaintiff followed up with Defendants about his claim on April 12, June 11, July 22, July 23 and July 26. Plaintiff was never told that a decision had been made on his claim.

34.      Plaintiff called his Farmers Claims Adjuster on November 24, 2021 regarding his claim. Plaintiff was immediately emailed a copy of the denial letter, which was dated May 13, 2021. *See* Denial Letter, attached hereto as Exhibit "E". The letter allegedly was sent via certified and regular mail, return receipt requested. Plaintiff never received the denial letter prior to November 24, 2021. Plaintiff has never seen proof that the Denial Letter was sent or delivered to his home in Sewell, New Jersey.

35.      The denial letter stated that the denial was based upon the Racing Exclusion.

36.      Based on information and belief, the Defendants have accepted the policy premiums with no intention of providing any coverage for property damage suffered during an HPDE event.

37.      Despite knowing that this HPDE event was not Racing, and being told the same by Plaintiff and MoE HPDE, Defendants still denied this loss.

38.      Defendants' biased investigation distorted the nature of Plaintiff's activities and the Denial Letter is rife with misrepresentations that improperly seek to characterize HPDE as Racing. The Denial Letter does not reference the MoE HPDE Letter. It fails to mention the fact that no timing was permitted. Defendants ignored the overwhelming evidence that HPDE is not racing because Defendants conducted an outcome-oriented investigation, as they do in every case involving claims that arise from incidents at HPDE events.

39.     Mr. Seybert was a novice who took part in HPDE to learn more about his automobile and its drivability. It was not Racing or practicing for Racing and the damage from his accident should have been covered by Defendants under the Policy.

40.     Defendants wrongfully denied Plaintiff's claim and Defendants did not pay for the damage to the Subject Vehicle.

41.     Plaintiff ultimately paid $24,985.53 out-of-pocket for the damage. *See* Repair Invoice, attached as Exhibit "F."

42.     In addition to the damage to the Subject Vehicle, there was also damage to a guardrail at the track totaling $1,170.00. *See* MoE HPDE Invoice, attached as Exhibit "G."

43.     Plaintiff also paid $230.00 for towing. *See* Towing invoice, attached at Exhibit "H."

## V.     DEFENDANTS HAVE KNOWN FOR YEARS THAT HPDE EVENTS AND RACING ARE SEPARATE CATEGORIES OF AUTO INSURANCE COVERAGE

44.     Defendants have known for years that there is a material difference between HPDE events and racing events for insurance coverage purposes.

45.     By the late 1990s, auto insurance companies started using policy language that explicitly excluded losses arising out of participation in high performance driving at a track.

46.     The below excerpt, from an article titled, "Car Insurance May Not Cover You at the Track," published in the *New York Times* more than thirteen years ago on October 17, 2008, demonstrates the evolution of this issue in the auto insurance industry:

> IT'S no secret that insurance companies don't like the people they cover to drive fast. So it shouldn't be a surprise that the industry has been removing a policy loophole that insured drivers on racetracks.
>
> That has left weekend warriors uninsured if they participate in track days or attend high-performance driving schools. Jerry Kunzman, executive director of the National Auto Sport Association, said that

participation at its track events had jumped fivefold since 2003 and that many of those drivers had no idea they were not covered.

. . .

What's happened is that many insurers have redefined the term "racing." Policies have long had exclusions for racing, but it was defined as a "timed event."

High-performance driver education neatly avoided that definition. Although cars may take laps at top speed, they aren't timed.

At many schools, including those held by the Porsche Club of America and the BMW Car Club of America, students are required to attend classroom sessions. On the track, drivers get one-on-one tutoring from an instructor under controlled conditions. The cars are generally sent around the track in small groups with passing limited to straightaways —and only when the driver being passed signals that doing so is all right. So because these runs were not timed, many drivers were covered by their normal automobile policies.

That loophole did not escape the attention of insurers — some clubs practically taunted them in their newsletters. "There was a period of time when clubs were openly flouting this. 'Take driver's education and your insurance will cover you. Drive your car the way it was meant to be driven,'" said McKeel Hagerty, chief executive of the Hagerty Insurance Agency, an automotive specialty insurer.

**So the industry began to add a new exclusion to its policies in the late 1990s, with most companies adding it within the last few years. Instead of trying to define racing, policies exclude damage at any location that could accommodate racing, timed or not. That eliminated coverage during high-performance driving schools and track days.**

Roy Furchgott, *Car Insurance May Not Cover You at the Track*, N.Y. TIMES, Oct. 17, 2008 (emphasis added), *available at* https://www.nytimes.com/2008/10/19/automobiles/19INSURE.html (last visited February 28, 2022).

47.     Another concrete example of the historical practice in the auto insurance industry to unambiguously write policies that excluded coverage for HPDE events and/or damage that

occurred on racetracks is found at *Hines v. Camper*, No. 2-11-31, 2012 WL 3893764, at \*1 (Ohio Ct. App. Sept. 10, 2012), where the Court analyzed an Allstate policy in connection with a drag race that occurred on May 14, 2010. *Hines*, 2012 WL 3893764, at \*1. *Hines* is significant because the Allstate policy in effect in 2010 excluded coverage for damages arising from "***use of an auto at a track or course designed for racing or high performance driving . . . .*" *Id.* (emphasis added)).

48.     Based on what Defendants actually knew, and based on what was commonly known by all in the auto insurance industry about how policy language affected coverage issues for property damage occurring at HPDE events, the Defendants clearly had the knowledge, ability, and capacity to use policy language that explicitly excluded losses arising out of participation in high performance driving at a track.

49.     If Defendants intended to apply the Racing Exclusion found in Plaintiff's Policy so broadly as to cover high performance driving events, they could ***EASILY*** have done so in their policy language, but they did not.

50.     Defendants, despite the demand for benefits under Plaintiff's Policy, have refused, without legal justification or cause, and continue to refuse, to pay to Plaintiff monies owed for the damages suffered as a result of the loss.

51.     As a direct and factual result of Defendants' breach of contract, Plaintiff has been denied the benefits of the bargain with Defendants.

52.     As a result of the failure and refusal to pay benefits to Plaintiff as required under Plaintiff's Policy, Plaintiff has suffered loss and damage in an amount in excess of $20,000.

## VI.     CLASS ACTION ALLEGATIONS

53.     This action is being brought by Plaintiff as a Class Action pursuant to FRCP 23, on Plaintiff's own behalf and on behalf of a class of persons to which he belongs as defined below.

54.     Members of Plaintiff's Class are defined as follows:

**Nationwide Class**:

> All nationwide automobile insurance policyholders of Defendants whose Policy contains the Racing Exclusion and who satisfy the following requirements:
>
> (a) the policyholder made a claim for property damage coverage arising from an accident that occurred at or during an HPDE event;
>
> (b) the claim falls within the Settlement Class Period; and,
>
> (c) the claim was denied pursuant to the Racing Exclusion.

**New Jersey Sub-Class**:

> All New Jersey automobile insurance policyholders of Defendants whose Policy contains the Racing Exclusion and who satisfy the following requirements:
>
> (a) the policyholder made a claim for property damage coverage arising from an accident that occurred at or during an HPDE event;
>
> (b) the claim falls within the Settlement Class Period; and,
>
> (c) the claim was denied pursuant to the Racing Exclusion.

The term "Racing Exclusion" shall have the same meaning as that contained at Paragraph 25, *supra*, and shall also include any similarly worded definitions and/or exclusions around racing that purport to exclude racing activities but do not mention or reference high performance driving education. The term "Policy" refers to any automobile insurance policy of Defendants that contains a "Racing Exclusion" as that term is defined herein. The term "Settlement Class Period" refers to the maximum amount of time allowed to sue for breach of contract, unfair trade practices, unfair insurance practices, or other statutory violation in the applicable jurisdiction where the class member's policy was purchased.

11

55.     The Classes will not include policyholders of Defendants whose insurance claims, as of the date of the Preliminary Approval Order:

>     (a) remain open according to the insurer's records;
>
>     (b) are the subject of an assignment of rights to payment by the policyholder to any third party;
>
>     (c) are the subject of a pending lawsuit, other than this Civil Action, against the insurer;
>
>     (d) are the subject of a final judgment in a lawsuit against the insurer or a release executed by the policyholder(s) in favor of the insurer; and/or
>
>     (e) are the subject of an ongoing or completed appraisal proceeding under the terms of an appraisal provision in a Policy.

56.     Upon information and belief, the Classes contain in excess of 100 policyholders located throughout the United States of America.

57.     The claim of Plaintiff as the representative party is typical of the claims of the Classes, including, but not limited to the following:

>     a.     A Class of persons insured under a Policy that excludes coverage for Racing, but not HPDE events, who have suffered covered property damage or loss to their personal property where the portion of the Policy, advertised as a Racing Exclusion, has been overbroadly interpreted to exclude coverage for vehicle damage that occurs at HPDE events.
>
>     b.     The misrepresentations, practices and policies of Defendants are typical of the Classes;
>
>     c.     Plaintiff and members of the proposed Classes have all been harmed by similar or identical conduct;
>
>     d.     The injuries suffered by Plaintiff are typical of other members of the Classes.

58.     There are questions of law or fact common to the Classes, including, but not limited to the following:

a.     Plaintiff and all members of the Classes have been issued a Policy, which included a Racing Exclusion;

b.     Plaintiff and all members of the Classes have suffered covered property damage loss to insured property;

c.     Plaintiff and all members of the Classes have been refused payment based upon Defendants overbroadly interpreting the Racing Exclusion to also exclude coverage for vehicle damage that occurs at HPDE events;

d.     Defendants have breached Policies that include a Racing Exclusion that were issued to Plaintiff and members of the Classes by overbroadly interpreting the Racing Exclusion to also exclude coverage for vehicle damage that occurs at HPDE events;

e.     Defendants have acted in bad faith by overbroadly interpreting the Racing Exclusion contained in the Policies to also exclude coverage for vehicle damage that occurs at HPDE events; and,

f.     Defendants' overbroad interpretation of its own policy terms is deceptive thereby violating New Jersey's Consumer Protection Law and other similar statutes nationwide.

59.     The interest of the Classes will be fairly and adequately asserted and protected by the representative parties and their counsel. First, Plaintiff has no conflict of interest in the maintenance of the Class Action. Second, Plaintiff's attorneys have more than 35 years of combined experience in handling and litigating complex insurance coverage disputes and bad faith claims. Third, Plaintiff's attorneys have considerable Class Action experience. Finally, sufficient financial resources are available to assure that the interests of the Classes will be protected.

60.     Adjudicating this controversy as a Class Action would be the fairest and most efficient method of resolution. Due to the large number of policyholders who have suffered identical losses, joinder would be impractical. Further, the prosecution of separate claims would most likely create varying or inconsistent adjudications and incompatible standards of conduct. Lastly, common questions of law and fact predominate over any issues involving only individual Class members.

## V.    CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT INCLUDING THE COVENANT OF GOOD FAITH AND FAIR DEALING

61.     Plaintiff incorporates by reference the facts and allegations contained in the foregoing paragraphs as though fully set forth hereinafter at length.

62.     Defendants are obligated by the terms of the Policies to indemnify the losses of the Plaintiff and the Classes.

63.     Defendants have breached the Policies issued to Plaintiff and members of the Classes by overbroadly interpreting the Racing Exclusion to also exclude coverage for vehicle damage that occur at HPDE events.

64.     Despite submission of reasonable proof and demand for full and complete payment with respect to Plaintiff's loss, Defendants have not paid to Plaintiff or the members of the Classes all of the policy benefits to which they are entitled under their respective Policies and have refused to provide funds sufficient to bring Plaintiff's Subject Vehicle and the vehicles of the Class Members to pre-loss condition.

65.     Defendants' denial of coverage was made without a reasonable basis in law or fact.

14

66.     By reason of Defendants' breach of contract, Plaintiff and members of the Classes have not received proper indemnification under their respective Policies.

67.     Defendants' refusal to indemnify the losses of Plaintiff and the members of the Classes constitutes a breach of their respective insurance contracts.

68.     As a consequence of the Defendants' pattern and practice of repudiating their contractual obligations, Plaintiff has been deprived of his contractual rights to receive benefits payable under the Policy.

69.     As a further consequence of Defendants' Breach of the Policy, Plaintiff has incurred and will continue to incur other out-of-pocket costs, counsel fees, litigation costs and expenses, and loss of use of the benefits payable to him under the Policy.

70.     Defendants have also breached the policies of other class members similarly situated to Plaintiff who were wrongfully denied insurance coverage pursuant to a Racing Exclusion for property damage that occurred during HPDE events.

71.     In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

72.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of

inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

73.     The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts and limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

74.     Defendants have breached the covenant of good faith and fair dealing and abused their discretion in the insurance contract as described herein. Specifically, Defendants should not have used its discretion to deny coverage for damages occurring during an HPDE event. In light of Defendants' knowledge and experience in treating HPDE events differently than *racing*, the Policy does not provide any basis for Defendants to deny coverage for damages occurring during an HPDE event.

WHEREFORE, Plaintiff and the Classes demand judgment against Defendants in an amount in excess of $5,000,000.00, together with interest and court costs.

**COUNT II**
**VIOLATION OF N.J. STAT. ANN. § 56:8-1,** *et seq.*
**NEW JERSEY'S CONSUMER FRAUD ACT AND OTHER SIMILAR STATUTES**
**NATIONWIDE**

75.     Plaintiff incorporates by reference herein the facts and allegations set forth in the foregoing paragraphs as fully as though same were here set forth at length.

76.     Defendants, acting by and through their duly authorized agents, servants, workmen or employees acting within the course and scope of their employment and on the business of said employer, made material misrepresentations of fact concerning the nature and quality of the Policies for the sole purpose of inducing justifiable reliance by Plaintiff and members of the Class

in paying the premiums for a policy of insurance which Defendants represented would protect Plaintiff's and the members of their classes' interests in their automobiles, when Defendants knew that these representations were false, fraudulent and misleading. Defendants therefore have violated New Jersey's Consumer Fraud Act ("NJCFA"), and other similar state statutes nationwide.

77.     The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise…." N.J. Stat. Ann. § 56:8-2.

78.     Defendants entered into contracts of insurance with its consumer customers in which insurers chose the language to bind the parties relating to insurance coverage.

79.     Defendants have engaged in unlawful conduct as a general business practice by breaching those contracts and misrepresenting its practices in the contracts. By engaging in the above-described practice and the actions and omissions herein alleged, Defendants have committed one or more unlawful acts in violation of the NJCFA.

80.     Plaintiff and members of the classes have suffered ascertainable losses of money, in the form of withheld insurance benefits for property damage losses, as a result of various unfair and/or deceptive acts or practices by Defendants, including but not limited to the following:

a.     Representing that the Policies have provisions, characteristics, uses or other benefits or, lack thereof, that, in fact, they did not have;

b.     Advertising the Policies with the intent not to provide the full coverage detailed therein;

c.      Advertising the Policies with the intent not to supply reasonably expected benefits;

d.      Failing to comply with the terms of guarantees and/or warranties given to Plaintiff prior to, at the time of, and after, Plaintiff's purchase of the Policy; and,

e.      Engaging in the aforementioned fraudulent and/or deceptive conduct which created a likelihood of confusion and misunderstanding.

81.     Plaintiff and members of the Classes justifiably relied upon the material misrepresentations made by Defendants concerning the nature and quality of their Policies and, as a result of such reliance, suffered those damages and losses set forth above.

82.     Defendants intended for customers to rely on the contracts and disclosures with regard to how it would interpret its policies and procedures and implement coverage decisions for its customers.

83.     Had Plaintiff and the Subclass known the actual facts or legal implications of those acts, they would have taken steps to ensure coverage, including but not limited to seeking other insurance opportunities. Therefore, a causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered.

84.     By reason of the foregoing, Defendants have been improperly and unjustly enriched to the detriment of Plaintiff and the New Jersey Subclass in an amount to be proven at trial. Plaintiff and the New Jersey Subclass are entitled to have disgorged and restored to them all improperly taken monies as a result of the conduct as alleged herein.

85.     Defendants' conduct caused Plaintiff and the members of the New Jersey Subclass to suffer an ascertainable loss. In addition to direct monetary losses, they received less than what

was promised to them in their policy and are therefore entitled to recover such damages, together with appropriate penalties, including treble damages, and legal fees and costs.

86.     As a result, Plaintiff and the members of the New Jersey Subclass have suffered an ascertainable loss of monies and, pursuant to NJ Stat. § 56:8-19, they are entitled to threefold damages.

WHEREFORE, Plaintiff and the Classes demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

## COUNT III
## BAD FAITH

87.     Plaintiff incorporates by reference herein the facts and allegations set forth in the foregoing paragraphs as fully as though same were here set forth at length.

88.     Defendants have engaged in bad faith conduct toward Plaintiff and the classes with respect to their overbroad interpretation of the Racing Exclusion and the failure to indemnify Plaintiff and the classes for their covered losses in violation of the laws of the State of New Jersey and other similar state laws nationwide.

89.     In furtherance of their bad faith and wrongful denial and refusal to pay benefits for Plaintiff's and the Classes' covered losses, Defendants acting by and through their duly authorized agents, servants, workmen or employees, have engaged in the following bad faith conduct:

a.     interpreting the Racing Exclusion to apply to property damage that occurs at or during HPDE events;

b.      selling Policies that purport to cover property damage that occurs at or during HPDE events with the knowledge and belief that the coverage would never be applied to such property damage;

c.      misleading Plaintiff and the class into believing that they had coverage for property damage that occurs at or during HPDE events while never intending to cover any such property damage;

d.      interpreting the Racing Exclusion in an overbroad fashion so that the exclusion wrongfully applies to property damage that occurred at or during HPDE events;

e.      misrepresenting to Plaintiff and the Classes that they are being provided coverage when in fact such coverage does not exist, when Defendants knew, or in the exercise of reasonable care should have known, that such misrepresentation was wholly without legal or factual basis;

f.      unnecessarily and unreasonably compelling Plaintiff and the classes to institute this lawsuit to obtain policy benefits for a covered loss which Defendants should have paid promptly and without the necessity of litigation;

g.      unreasonably withholding a benefit due and owing under a Policy; and,

h.      acting unreasonably and unfairly in response to claims.

90.     Defendants' action in interpreting the Policies to exclude coverage for property damage that occurs at HPDE events rises to the level of bad faith.

91.     Defendants had no reasonable basis or valid reason to disregard damage that was a covered loss under the Policy.

92.     Defendants failed to conduct a reasonable investigation to determine whether there was a reasonable basis for denial.

93.     Defendants denied benefits under this claim without a fairly debatable reason to do so.

94.     Defendants conducted an outcome oriented investigation and refused to accept all of the evidence as it pertained to the loss.

95.     Defendants' improper limitation of this benefit was done without any reasonable basis in law or fact and in reckless disregard of Defendants' fiduciary responsibility to treat Plaintiff and members of the Classes in a fair and impartial manner.

96.     Finally, Defendants' conduct was motivated by financial self-interest and was accomplished with reckless indifference to the rights of Plaintiff and members of the Classes.

97.     For the reasons set forth above, Defendants have acted in bad faith and in violation of New Jersey law, as well as the law of all other states nationwide, rendering Defendants liable for damages including compensatory damages, consequential damages, punitive damages, pre-and post-judgment interest, attorney's fees and costs, and such other and further relief as the Court deems just and equitable.

98.     The practice of Defendants in overbroadly interpreting the Policies to exclude coverage for property damage that occurs at HPDE events has been perpetrated by Defendants maliciously and in conscious disregard for the rights of policyholders solely for the financial advantage of Defendants thereby rendering Defendants liable for punitive damages.

99.     Defendants have engaged in bad faith conduct toward Plaintiff and members of the Classes and have treated Plaintiff and members of the Classes unreasonably with respect to the payment of benefits for their covered losses in violation of New Jersey law, as well as the law of all other states nationwide.

100.    As a result of Defendants' bad faith conduct, Plaintiff has been forced to commence the present litigation on behalf of himself and the class and has incurred and will incur costs, expenses and counsel fees.

WHEREFORE, Plaintiff and the Classes demand judgment against Defendants for compensatory damages including costs, counsel fees, interest, punitive damages and such other relief as the Court may deem equitable and just.

## COUNT IV
## DECLARATORY RELIEF

101.    Plaintiff incorporates by reference herein the facts and allegations set forth in the foregoing paragraphs as fully as though same were here set forth at length.

102.    The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

103.    An actual controversy has arisen between Plaintiff and the Defendants as to the rights, duties, responsibilities and obligations of the parties under the Policy in that the Defendants contend and Plaintiff dispute and deny that:

a)      Participating in an HPDE event is "racing";

b)      Losses incurred while participating in an HPDE event are excluded from coverage;

c)      The language of the Racing Exclusion precludes coverage for losses incurred while participating in an HPDE event; and,

d)    The Policy does not include coverage for losses incurred while participating in an HPDE event.

104.    Resolution of the duties, responsibilities and obligations of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

105.    Plaintiff seeks a Declaratory Judgement to determine a) through e) above, as defined in the Policy.

106.    Plaintiff further seeks a Declaratory Judgement to affirm that losses incurred while participating in an HPDE event are not excluded by the Racing Exclusion.

107.    Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff.

WHEREFORE, Plaintiff and the Classes demand declaratory judgment against Defendants that coverage exists in these circumstances.

## VI.    <u>REQUESTED RELIEF</u>

The following relief is requested by Plaintiff and members of the Classes:

a.    Certification of this case as a class action;

b.    Appointment of Plaintiff as a representative of the Classes and the undersigned as Class Counsel;

c.    Preliminarily and thereafter permanently enjoining the Defendants from engaging in the acts described herein;

d.    Compensatory damages to Plaintiff in the amount of money due as a result of Defendants overbroadly interpreting the Racing Exclusion in the Policy to also exclude coverage for damage that arose from an accident that occurred at an HPDE event, and such

compensatory damages to each member of the Classes in an amount to be determined, including interest on said amounts for Plaintiff and members of the Classes;

  e. Bad faith damages pursuant to New Jersey common law and the law of other states nationwide;

  f. For a declaration that that coverage exists in these circumstances, that the Racing Exclusion does not preclude coverage for losses incurred while participating in an HPDE event, and for such other declaratory relief as the Court may deem proper;

  g. an order requiring that Defendants disgorge all funds wrongfully withheld from Plaintiff and the Classes;

  h. punitive, treble and/or multiple damages;

  i. litigation costs and counsel fees;

  j. administrative costs and expenses incurred in the class certification process; and

  k. such additional relief as the Court may deem necessary and proper.

### **JURY TRIAL DEMANDED**

Plaintiff herein demands a trial by jury of all issues so triable.

**Dated: March 4, 2022**

**Respectfully submitted,**

BY: _ /s/ Kenneth J. Grunfeld_
Kenneth J. Grunfeld, Esquire
Attorney I.D. No.: 84121
Richard Golomb, Esquire
Attorney I.D. No.: 42845
Kevin W. Fay, Esquire
Attorney I.d. No.: 308252
GOLOMB SPIRT GRUNFELD, P.C.
1835 Market Street, Suite 2900
Philadelphia, PA 19103
rgolomb@golomblegal.com
kgrunfeld@golomblegal.com
kfay@golomblegal.com

Steven Gillman, Esquire
Attorney I.D. No. 33767
STEVEN GILLMAN, P.C.
10 Lake Center Executive Park
401 Route 73 North, Suite 204
Marlton, NJ  08053
E-mail:  sg@gillmanlegal.com
Phone:  215-925-9900 (PA Office)
Phone:  856-939-6600 (NJ Office)
Fax:  215-240-7983 (For PA & NJ Office)
www.gillmanlegal.com
*Attorneys for Plaintiff and the Proposed Classes*